## UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

————————————

SCOTT FREMONT SPOHN,

        Plaintiff,                      Case No.  1:16-cv-952

v.

                                     HON. JANET T. NEFF

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

### OPINION

      This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of the Social Security Administration (Commissioner).  Plaintiff seeks review of the Commissioner's decision denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.  Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

### STANDARD OF REVIEW

      The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the

facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was fifty-one years of age on the date of the ALJ's decision. (PageID.73, 86, 101.) He obtained a GED, and was previously employed as an industrial truck driver, concrete quality controller, window installer, and concrete foreman. (PageID.44, 63–64.) Plaintiff applied for benefits on September 25, 2013, alleging disability beginning June 1, 2009, due to degenerated discs in the cervical region, chronic pain, damage to left ulnar nerve, degenerative disc disease, chronic migraines, and carpal tunnel syndrome. (PageID.73–74, 86–87, 205–235.) Plaintiff's

applications were denied on March 5, 2014, and Plaintiff subsequently requested a hearing before an ALJ. (PageID.128–152.) On February 5, 2015, Plaintiff appeared with his counsel before ALJ Christopher L. Dillon for an administrative hearing at which time Plaintiff and a vocational expert (VE) both testified. (PageID.38–71.) On May 20, 2015, the ALJ issued an unfavorable written decision that concluded Plaintiff was not disabled. (PageID.101–124.) On June 14, 2016, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.23–28.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c) 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.20(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. §§ 404.1520(f), 416.920(f)).

3

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Dillon determined that Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity since June 1, 2009, the alleged disability onset date. (PageID.106–107.) At step two, the ALJ determined Plaintiff had the severe impairments of: (1) cervical and lumbar spine disorder; (2) residuals of right shoulder disorder; (3) carpal tunnel syndrome (CTS); (4) bilateral knee disorder; (5) obesity; (6) affective disorder; and (7) an anxiety-related disorder. (PageID.107–108.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.108–111.) At the fourth step, the ALJ determined Plaintiff retained the RFC based on all the impairments:

> for work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighting up to 10 pounds; pushing or pulling similar amounts; standing and/or walking for a total of no more than 2 hours per work day; sitting for a total of 6 hours; no climbing of ropes/ladders/scaffolding; no more than occasional ability to perform all other postural activity; no foot pedal operation; no more than frequent reaching with the dominant right upper extremity, but no reaching above shoulder level with either upper extremity; no more than frequent handling and fingering; no more than frequent interaction with supervisors, coworkers, and the public; and no more than simple, routine, repetitive tasks.

(PageID.111.) Continuing with the fourth step, the ALJ made no finding regarding Plaintiff's past relevant work. (PageID.117.) Accordingly the ALJ proceeded to the fifth step and questioned the

VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given his limitations. *See Richardson*, 735 F.2d at 964. The VE testified that Plaintiff could perform other light, unskilled, work as a final inspector (450,000 national positions), final assembler (395,000 national positions) and as a sorter (400,000 national positions). (PageID.65–67.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.118.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from June 1, 2009, the alleged disability onset date, through May 20, 2015, the date of decision. (PageID.119–120.)

## DISCUSSION

The medical-vocational guidelines, also known as the "grids," consider four factors relevant to a particular claimant's employability: (1) residual functional capacity, (2) age, (3) education, and (4) work experience. 20 C.F.R., Part 404, Subpart P, Appendix 2. Social Security regulations provide that "[w]here the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00.

The grids only take into consideration a claimant's exertional (i.e., strength) limitations. Accordingly, where a claimant suffers from "nonexertional limitations that significantly restrict the range of available work," use of the grids alone to make a disability determination is inappropriate. *See Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 424 (6th Cir. 2008). As the Sixth Circuit observed:

> [W]here a claimant has nonexertional impairments alone or in
> combination with exertional limitations, the ALJ must treat the grids

5

> as only a framework for decisionmaking, and must rely on other evidence to determine whether a significant number of jobs exist in the national economy that a claimant can perform. Reliance upon the grids in the presence of nonexertional limitations requires reliable evidence of some kind that the claimant's nonexertional limitations do not significantly limit the range of work permitted by [her] exertional limitations.

*Id.* at 424 (internal citations omitted). Plaintiff contends that the ALJ erred when he concluded that Plaintiff's claim failed at step five. While apparently conceding the ALJ's RFC determination is supported by substantial evidence, Plaintiff argues the ALJ erred when he applied the grid rule for light work at step five, and should have applied a sedentary grid rule instead. He furthermore asserts that a social security ruling, SSR 83–10, precludes a finding that he was able to perform light work.

A plaintiff's residual functional capacity (RFC) represents his ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96–8P, 1996 WL 374184, at *1 (SSA July 2, 1996); *see also Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 116 (6th Cir. Nov.18, 2010).

Social Security regulations and rulings state: "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, *or when it involves sitting most of the time with some pushing and pulling of arm or leg controls*" (emphasis added). 20 C.F.R. § 404.1567; SSR 83–10, 1983 WL 31251, at *6 (SSA 1983); *Van Winkle v. Comm'r of Soc. Sec.*, 29 F. App'x 353, 357 (6th Cir. Feb.6, 2002). Plaintiff does not argue that he can not meet the lifting requirements noted above, but argues that SSR 83–10's description of light work is incompatible with the RFC prescribed by the ALJ that

limited him to two hours of standing or walking during the workday. The Court is not persuaded.

In his decision, the ALJ concluded, at step five, that there was a significant number of jobs that Plaintiff could perform, given his RFC. The ALJ specifically noted that:

> In determining whether a successful adjustment to other work can be made, I must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 983-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

> If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21 and Rule 202.14. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as Final Inspector (<u>Dictionary of Occupational Titles</u> (DOT) codes 7.27.687-054), with 450,000 jobs nationally; Final Assembler (DOT code 731.687-018), with 395,000 jobs nationally; and Sorter (DOT code 733.687-062), with 400,000 jobs nationally.

> Although the vocational expert's testimony is inconsistent with the information contained in the DOT, there is a reasonable explanation for the discrepancy. Pursuant to SSR 00-4p, I have determined that

the vocational expert's testimony is consistent with the information contained in the DOT, with the exception of the information related to overhead reaching and the combination of light lifting/carrying and sedentary standing/walking requirements, which the DOT does not address. As it relates to those limitations, the vocational expert relied upon her own education, expertise and experience in the vocational field.

(PageID.118.)

Plaintiff contends that his RFC is not properly classified as light because the ALJ found he could only stand or walk for two hours in a workday. Plaintiff primarily relies on SSR 83-10 for support. That ruling clarifies "the manner in which the medical-vocational rules in Appendix 2 of Subpart P, Regulations No. 4, address the issue of capability to do other work, and to provide definitions of terms and concepts frequently used in evaluating disability under the medical-vocational rules." SSR 83–10, 1983 WL 31251 (SSA Jan. 1, 1983.)

Plaintiff correctly notes that "light work" is defined as "as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing—the primary difference between sedentary and most light jobs." *Id.* at *5; *see also* 20 C.F.R. §§ 404.1567(b), 416.967(b). But the ALJ's RFC is not plainly incongruent with this definition. That is because the regulations go on to note that "A job is also in this [light work] category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work." SSR 83–10, 1983 WL 31251 at *5. Admittedly, this is a close case. Not only is Plaintiff unable to perform a "good deal of walking or standing," he also cannot operate foot pedals. Thus, Plaintiff clearly would be unable to perform a large swath of light work jobs. But the fact remains the ALJ

did not preclude Plaintiff from using arm-hand controls. Thus, Plaintiff's RFC is not, on its face, inconsistent with the definition of light work.[2]

To reiterate, Plaintiff cannot perform a full range of light work. But that is not what the ALJ found. In such cases when a claimant's RFC does not coincide with the definition of one of the ranges of work because the claimant has additional limitations that may erode the occupational base, the Commissioner uses the grids only as a framework for decision making and relies on other vocational evidence, such as VE testimony, to determine whether the claimant can still do a significant number of jobs with those nonexertional limitations. *Burton v. Sec'y of Health & Human Servs.*, 893 F.2d 821, 822 (6th Cir. 1990). Thus the ALJ could not, and did not, rely only on the grids to make his step five determination. As the ALJ clearly stated, he used the grids only as a framework, and relied on the VE's testimony to determine whether a significant number of jobs exists that Plaintiff could perform. In response to a hypothetical mirroring the RFC, the ALJ identified 1,195,000 national light and unskilled jobs in three representative occupations of positions Plaintiff was capable of performing. A VE's testimony in response to an accurate hypothetical may provide substantial evidence at step five that the claimant is able to perform a significant number of jobs. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). Here, the numbers provided by the VE constitute a significant number of jobs. *See Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988);

---

[2] Plaintiff also contends that a finding of light work runs counter to the opinion of the Agency's consultant and the POMS. (PageID.439.) It does not appear that the agency medical expert classified Plaintiff's RFC as sedentary. Instead, it appears it was made by an agency official. (PageID.81–86.) But even if the expert did opine that Plaintiff's RFC was for sedentary work, such would not mandate reversal because the final responsibility for determining RFC lies with the ALJ. *See Coldiron v. Comm'r of Soc. Sec.*, 371 F. App'x 435, 439 (6th Cir.2010) (citing 42 U.S.C. § 423(d)(5)(B)). Secondly, the POMS Plaintiff references was not effective on the date of the ALJ's decision. *See* Program Operations Manual System (POMS), DI 24014.006, *available at* https://secure.ssa.gov/poms.nsf/lnx/0425015006. But even if the ALJ violated the POMS, such would not require reversal. *See Bates v. Comm'r of Soc. Sec.*, No. 1:15-CV-739, 2016 WL 4607566, at *4 (W.D. Mich. Sept. 6, 2016) (noting that the POMS have no legal force).

*McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988).

Plaintiff contends that, notwithstanding the VE testimony, the DOT descriptions of the jobs identified by the VE are incompatible with the ALJ's RFC determination.  (PageID.440.) Plaintiff has waived this claim.  Though Plaintiff's counsel extensively questioned the VE, he did not object to the VE's testimony that Plaintiff was capable of performing the three identified positions.  (PageID.67–71.)  "The Sixth Circuit, along with other courts across the country, have generally recognized that a claimant's failure to object to testimony offered by a vocational expert, at the time of the administrative proceeding, waives the claimant's right to raise such issues in the district court." *Harris v. Comm'r of Soc. Sec. Admin.*, No. 1:11–cv–1290, 2012 WL 4434078, at *3 (N.D. Ohio Sept. 24, 2012) (citing *Hammond v. Chater*, No. 96–3755, 1997 WL 338719, at *3 (6th Cir. June 18, 1997) (finding the plaintiff's failure to raise objections to the VE's testimony waived the argument on appeal)); *see Lyon v. Comm'r of Soc. Sec.*, No. 1:11–cv–1104, 2013 WL 1149967, at *4 (W.D. Mich. March 19, 2013) (the plaintiff's challenge to the VE's testimony was waived because she failed to object to the testimony at the administrative hearing).  Accordingly, the Court deems this error waived.

Even if Plaintiff did not waive this objection, it would not succeed.  At the hearing, the VE admitted the testimony was inconsistent with the DOT in two respects: the DOT did not account for overhead reaching and the reduced range of standing.  (PageID.66–67.)  Under SSR 00-4p, the ALJ was obligated only to ask the VE whether his testimony was consistent with the DOT, and he did so.  *See, e.g.*, *Davidson v. Astrue*, 2009 WL 3161358, *3 (E.D. Ky. Sept.28, 2009) (David Bunning, J.).  Having identified the inconsistency, the ALJ found a reasonable explanation for it by referencing the VE's education, expertise, and experience in the vocational field.

(PageID.118.)

In sum, the ALJ did not err by determining Plaintiff's ability to stand or walk for two hours in an eight-hour workday fell within a reduced range of light work. Because Plaintiff was unable to perform the full range of light work, however, the ALJ properly relied on VE testimony in determining there were significant numbers of jobs in the national economy that Plaintiff could perform.

Plaintiff's claims of errors are denied.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **AFFIRMED**.

A separate judgment shall issue.


Dated:  July 3, 2017                                     /s/ Janet T. Neff
                                                         JANET T. NEFF
                                                         UNITED STATES DISTRICT JUDGE